**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:25-cv-22939-RKA**

SHOWMOJO, LLC and TENANT TURNER, INC.,

*Plaintiffs*,

v.

THRESHOLD, LLC d/b/a RENTENGINE and ALEXANDER STRINGFELLOW,

*Defendants.*

---

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 2

I. Plaintiffs' Leading Proprietary Platforms and Security Measures .......... 2

II. Defendants' Orchestrated Campaign to Gain Unauthorized Access to Plaintiffs' Platforms .......... 2

III. Defendants' Disregard of Legal Demands and Ongoing Harm .......... 4

ARGUMENT .......... 5

I. The Applicable Legal Standard Warrants Issuance of a Preliminary Injunction .......... 5

II. There Is a Substantial Likelihood That Plaintiffs Will Succeed on the Merits .......... 5

A. Defendants' Unauthorized and Ongoing Accessing of Plaintiffs' Platforms is a Clear Violation of the Computer Fraud and Abuse Act .......... 5

B. Defendants' False and Misleading Statements Constitute False Advertising in Violation of the Lanham Act .......... 7

C. Defendants' Unfair and Deceptive Acts Give Rise to Liability Under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) .......... 9

D. Defendants' Unlawful Conduct Constitutes Common Law Unfair Competition .......... 11

E. Defendants' Deliberate Interference with Plaintiffs' Customer Contracts Establishes Tortious Interference .......... 11

F. Defendants' Unauthorized Access and Exploitation of Plaintiffs' Proprietary Assets Results in Unjust Enrichment .......... 12

G. Defendants' Wrongful Exercise of Dominion Over Plaintiffs' Property Constitutes Conversion .......... 13

H. Defendants' Unauthorized Use and Interference with Plaintiffs' Platforms Constitutes Trespass to Chattels .......... 14

I. Defendants' Material Misrepresentations and Deceptive Conduct Constitute Common Law Fraud .......... 15

III. Plaintiffs Are Being Irreparably Harmed by Defendants' Conduct .......... 16

IV. The Balance of Hardships Weighs Decisively in Favor of Plaintiffs .......... 18

V. The Public Interest Would Be Advanced by the Issuance of the Requested Injunction .......... 18

CONCLUSION .......... 19

TABLE OF AUTHORITIES

Page(s)

Cases

*1st Team Tech., Inc. v. Sys. Eng'g, Inc.*
No. 3:10CV256/MCR/CJK, 2012 WL 12873551 (N.D. Fla. June 12, 2012)....................15, 16

*ADT LLC v. Alder Holdings*
LLC, No. 17-81237-CIV, 2018 WL 6505915 (S.D. Fla. Nov. 7, 2018), *report and recommendation adopted*, No. 9:17-CV-81237, 2018 WL 6620301 (S.D. Fla. Dec. 4, 2018) ....................11, 12

*ADT LLC v. Teamtronics, Inc.*
No. 14-CV-81589, 2015 WL 12866274 (S.D. Fla. May 18, 2015), *report and recommendation adopted*, No. 9:14-CV-81589, 2015 WL 12866275 (S.D. Fla. June 8, 2015) ....................8

*ADT LLC v. Vivint, Inc.*
No. 17-CV-80432, 2017 WL 5640725 (S.D. Fla. Aug. 3, 2017) ....................11

*Am. Fed'n of Lab.-Cong. of Indus. Organizations v. City of Miami*
No. 07-22966-CIV, 2008 WL 11333331 (S.D. Fla. Sept. 4, 2008)....................14, 15

*Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team*
LLC, No. 20-CV-25318, 2023 WL 4105529 (S.D. Fla. June 21, 2023), *opinion clarified*, No. 20-CV-25318, 2023 WL 4132386 (S.D. Fla. June 22, 2023) ....................10

*Bolger v. Youngs Drug Prods. Corp.*
463 U.S. 60 (1983)....................8

*Brown Jordan Int'l, Inc. v. Carmicle*
846 F.3d 1167 (11th Cir. 2017) ....................7

*Carillon Importers, Ltd. v. Frank Pesce Int'l. Group Ltd.*
112 F.3d 1125 (11th Cir. 1997) ....................5

*Carriuolo v. Gen. Motors Co.*
823 F.3d 977 (11th Cir. 2016) ....................10

*Coddington v. Staab*
716 So. 2d 850 (Fla. 4th DCA 1998)....................14

*D&J Optical, Inc. v. Wallace*
No. 1:14CV658-MHT, 2015 WL 1474146 (M.D. Ala. Mar. 31, 2015)....................14

*eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*
519 F. Supp. 3d 1129 (S.D. Fla. 2021) ....................19

*Facebook, Inc. v. Power Ventures, Inc.*
252 F. Supp. 3d 765 (N.D. Cal. 2017) ....................17

*Facebook, Inc. v. Power Ventures, Inc.*
844 F.3d 1058 (9th Cir. 2016) ....................7

*Ferrellgas Partners, L.P. v. Barrow*
143 F. App'x 180 (11th Cir. 2005) ....................17

*Grace v. Apple, Inc.*
328 F.R.D. 320 (N.D. Cal. 2018) ....................14

*Island IP Acquisitions, LLC v. Antle*
No. 22-81293-CIV, 2023 WL 11917231 (S.D. Fla. May 19, 2023) ....................13

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*
299 F.3d 1242 (11th Cir. 2002) ....................8

*Klein v. Oved*
No. 9:22-CV-80160-KAM, 2022 WL 4772399 (S.D. Fla. Aug. 19, 2022) ....................14

*LeVeille v. Upchurch*
No. 3:19-CV-908-BJD-MCR, 2021 WL 6125470 (M.D. Fla. Oct. 15, 2021) ....................14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
572 U.S. 118 (2014) ....................9

*Lighthouse List Co., LLC v. Cross Hatch Ventures Corp.*
No. 13-60524-CIV, 2013 WL 11977916 (S.D. Fla. Aug. 13, 2013) ....................13, 14

*McDonald's Corp. v. Robertson*
147 F.3d 1301 (11th Cir. 1998) ....................5

*MJS Music Publications, LLC v. Hal Leonard Corp*
No. 806CV488T30EAJ, 2006 WL 1208015 (M.D. Fla. May 4, 2006) ....................9

*Moon v. Med. Tech. Assocs., Inc.*
No. 8:13-cv-02782, 2014 WL 1092291 (M.D. Fla. Mar. 19, 2014) ....................18

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*
522 F.3d 1211 (11th Cir. 2008) ....................17

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*
No. 1:06-CV-1678-JTC, 2007 WL 9752026 (N.D. Ga. Mar. 30, 2007) ....................8

*Osmose, Inc. v. Viance, LLC*
612 F.3d 1298 (11th Cir. 2010) ....................9

*Physicians Interactive v. Lathian Sys., Inc.*
2003 WL 23018270 (E.D. Va. Dec. 5, 2003) ....................17, 18

*Pixsys Techs., Inc. v. Agemni, L.L.C.*
No. 2:13-CV-1929-SLB, 2013 WL 5739027 (N.D. Ala. Oct. 22, 2013) ....................6, 16, 17

*Plastiquim, S.A. v. Odebrecht Constr., Inc.*
337 So. 3d 1270 (Fla. 3d DCA 2022) ....................15

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*
842 So. 2d 773 (Fla. 2003) ....................9

*Rosenthal Toyota, Inc. v. Thorpe*
824 F. 2d 897 (11th Cir. 1987) ....................14

*Skidata, Inc. v. Goudie*
612CV1612ORL36KRS, 2012 WL 12883837 (M.D. Fla. Nov. 2, 2012) ....................6

*State Analysis, Inc. v. Am. Fin. Servs. Assoc.*
621 F. Supp. 2d 309 (E.D. Va. 2009) ....................14

*Summit Ent., LLC v. Santia*
No. 2:11-CV-06310-ODW-SSX, 2014 WL 12577430 (C.D. Cal. June 24, 2014) ....................14

*Taxsalelists.com, L.L.C. v. Rainer*
No. 09-CV-02898-REB-KMT, 2009 WL 4884273 (D. Colo. Dec. 11, 2009) ....................18

*Tech. Med. Advancements, LLC v. Advanced Med. Distributors*
No. 15-80194-CIV, 2015 WL 11438210 (S.D. Fla. Oct. 2, 2015), *report and recommendation adopted*, No. 9:15-CV-80194, 2015 WL 11438211 (S.D. Fla. Oct. 22, 2015) ....................11

*Teva Pharm. USA, Inc. v. Sandhu*
291 F. Supp. 3d 659 (E.D. Pa. 2018) ....................6

*TracFone Wireless, Inc. v. Adams*
98 F. Supp. 3d 1243 (S.D. Fla. 2015) ....................13, 17

*TracFone Wireless, Inc. v. Cabrera*
883 F. Supp. 2d 1220 (S.D. Fla. 2012) ....................6, 7

*TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*
102 F. Supp. 3d 1321 (S.D. Fla. 2015) ....................5

*TracFone Wireless, Inc. v. Hernandez*
196 F. Supp. 3d 1289 (S.D. Fla. 2016) ....................13

*Wyndham Vacation Ownership, Inc. v. US Consumer Att'ys, P.A.*
No. 18-81251-CIV, 2019 WL 7837887 (S.D. Fla. July 3, 2019) ........................................8, 9

*Wyndham Vacation Ownership v. Gallagher*
No. 619CV00476GAPEJK, 2019 WL 5458815 (M.D. Fla. Sept. 10, 2019)..........................10

*YourNetDating, Inc. v. Mitchell*
88 F. Supp. 2d 870 (N.D. Ill. 2000) ........................................................................18

*Zamber v. Am. Airlines, Inc.*
282 F. Supp. 3d 1289 (S.D. Fla. 2017) ....................................................................10

<u>Statutes</u>

18 U.S.C.
§ 1030(a) .............................................................................................. passim
§§ 1030(a)(2), (a)(4) ........................................................................................5
§ 1030(a)(2)(C) ................................................................................................5
§ 1030(a)(4) ..................................................................................................5, 6
§ 1030(c) ........................................................................................................18
§ 1030(e)(2) .......................................................................................................6
§ 1030(e)(2)(B) ..................................................................................................6
§ 1030(e)(11) ..................................................................................................6, 7
§ 1030(g) ............................................................................................................6

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204(1)
.........................................................................................................1, 5, 9, 10

Lanham Act, 15 U.S.C. § 1125(a)(1)(B) ..........................................................1, 5, 7, 8, 9, 10, 11

Plaintiffs Tenant Turner, Inc. ("Tenant Turner") and ShowMojo, LLC ("ShowMojo") (collectively, "Plaintiffs") move for a Preliminary Injunction against Threshold, LLC d/b/a RentEngine ("RentEngine") and Alexander Stringfellow ("Stringfellow") (collectively, "Defendants"), to immediately enjoin them from continuing to engage in certain acts in violation of Plaintiffs' rights pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a), the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204(1), and the common law, and states as follows:

## INTRODUCTION

Plaintiffs seek to halt Defendants' ongoing and unlawful campaign to gain improper access to Plaintiffs' proprietary software platforms, confidential business information, and crucial customer relationships and to publish false and misleading statements about Plaintiffs' software platforms. Defendants are systematically targeting Plaintiffs' secure, password-protected platforms, which are protected by strict customer agreements expressly prohibiting the sharing of access credentials and limiting use to authorized purposes. The harm to Plaintiffs' reputation, client relationships, and ongoing business operations is ongoing.

Through calculated deceit, Defendants solicit Plaintiffs' customers to divulge their login credentials under false pretenses, then use those credentials to create false accounts and circumvent Plaintiffs' technical safeguards. Defendants leverage this improper and unauthorized invasion of Plaintiffs' platforms to extract valuable proprietary content and data, and systematically solicit Plaintiffs' customers. RentEngine uses Plaintiffs' confidential business information to enhance its own offerings and as part of public marketing campaigns to lure away Plaintiffs' customers and disrupt Plaintiffs' business.

One of RentEngine's co-founders, Stringfellow, has personally directed and orchestrated the solicitation of Plaintiffs' customers for unauthorized credentials, the creation and use of deceptive accounts and domains to bypass security measures, and the repeated extraction and exploitation of Plaintiffs' proprietary information. His involvement and direction are central to RentEngine's strategy to unlawfully advance its own products and undermine Plaintiffs' contractual positions and reputations.

Despite receiving a detailed cease-and-desist notice and clear demands from Plaintiffs to cease their unlawful conduct, Defendants refuse to stop these actions. In fact, Defendants

continue to try to gain access using different disguised domain addresses. Their continued disregard demonstrates a brazen indifference to legal obligations and to Plaintiffs' significant investments in building, protecting, and maintaining their business. Immediate injunctive relief is essential to prevent further irreparable injury to Plaintiffs' competitive advantage, reputation, client relationships, and ongoing business operations.

## FACTUAL BACKGROUND

### I. PLAINTIFFS' LEADING PROPRIETARY PLATFORMS AND SECURITY MEASURES

Plaintiffs are leaders in the property management software industry, each having developed proprietary software-as-a-service (SaaS) solutions specifically tailored for the property management sector across the United States (collectively referred to as "Plaintiffs' Platforms" or the "Platforms") to streamline leasing activities, enhance lead management, facilitate showings, support communications with prospective tenants, and allow seamless integration with third-party services and hardware. (*See* Declaration of John Squire ("Squire Dec."), attached hereto as **Exhibit 1**, ¶ 2; Declaration of Layne Kiser ("Kiser Dec."), attached hereto as **Exhibit 2**, ¶ 2.)

Access to Plaintiffs' Platforms is limited to paying subscribers, governed by written and online agreements, which impose stringent confidentiality requirements, bar third-party use, and expressly prohibit reverse engineering, copying, or exploiting the Platforms for the benefit of competitors. (Squires Dec. ¶¶ 8, 9; Kiser Dec. ¶¶ 7, 8; Compl. ¶ 23(a), 23(b), 24.) These technical safeguards and contractual protections are vital to maintaining the integrity, confidentiality, and competitive value of Plaintiffs' Platforms. (Compl. ¶ 26.) Plaintiffs devote substantial resources to developing, maintaining, and safeguarding these proprietary solutions, which underpin their continued leadership and reputation in the industry. (*Id.*)

### II. DEFENDANTS' ORCHESTRATED CAMPAIGN TO GAIN UNAUTHORIZED ACCESS TO PLAINTIFFS' PLATFORMS

Defendants devised and are carrying out a coordinated scheme to gain unauthorized access to Plaintiffs' secure Platforms and obtain competitively sensitive information fueling RentEngine's rapid development and expansion. (Compl. ¶ 27.) Specifically, Plaintiffs recently discovered that RentEngine has been directly soliciting Plaintiffs' customers to provide their login credentials, falsely representing the need as related to "data migration" or "demonstrations." (Compl. ¶ 28; *see also* Kiser Dec. ¶ 11.) Defendants have been creating

additional accounts—including accounts for Stringfellow—to enable deeper and more frequent unauthorized access. (Compl. ¶ 29*; see also* Kiser Dec. ¶ 14.)

When Plaintiffs detected and blocked RentEngine's official email domains, Defendants shifted tactics, using alias email addresses and fictitious domains, including personal Gmail accounts, to bypass Plaintiffs' security controls and maintain their unauthorized access. (Compl. ¶ 31; Kiser Dec. ¶¶ 13-14.) Due to Defendants' covert tactics, Plaintiffs have been forced to continually monitor for IP addresses associated with RentEngine and other suspicious email addresses, blocking user accounts when necessary. (Compl. ¶ 31).

Once inside Plaintiffs' Platforms, Defendants accessed and extracted, *inter alia*, proprietary software features, workflows, user experiences and customer usage metrics. (Compl. ¶ 32; *see also* Squires Dec. ¶ 17.) RentEngine improperly leveraged these assets—representing years of Plaintiffs' investment and specialized development—to directly target Plaintiffs' existing customers and accelerate its own business and product development. (Compl. ¶¶ 32-33, 36.)

Defendants also publicly uses Plaintiffs' internal metrics in RentEngine's marketing materials, blog posts, and social media, thereby creating a false and disparaging impression of Plaintiffs' products in the marketplace. (Compl. ¶ 36; Squires Dec. ¶¶ 19-20; Kiser Dec. ¶¶ 19-22.) For example, on March 19, 2025, RentEngine published a blog post titled "Tenant Turner vs Rent Engine," which remains active on RentEngine's website and social media, featuring multiple images of Tenant Turner's platform and making false claims about the Platform's capabilities (the "March 19 Blog Post"). (Kiser Dec. ¶ 20.) The March 19 Blog Post incorrectly describes Tenant Turner's reporting features as limited to "basic owner reports and lead activity," misrepresents Tenant Turner only offers standard listing syndication, falsely states Tenant Turner integrates solely with Sentrilock and Codebox, and misleadingly claims that Tenant Turner only offers a paid API. (*Id.* ¶ 21-22.) In reality, Tenant Turner offers comprehensive reporting options, advanced syndication capabilities for premium listings, integrations with a range of lockbox providers beyond those mentioned, and a robust, freely available API with extensive functionality. (*Id.* ¶ 22.)

Similarly, on March 30, 2025, RentEngine published a blog post titled "ShowMojo vs Rent Engine," which also remains active online and includes multiple images of ShowMojo's platform and several inaccurate claims that ShowMojo offers only "basic, unbranded, partial

smart scheduling," "no lead nurturing," "no API," and limited support for certain lockboxes, calendars, and general support options (the "March 30 Blog Post" and, together with the "March 19 Blog Post, the "Blog Posts"). (Squires Dec. ¶¶ 21-22.) These representations are false. (*Id.* ¶ 22.) ShowMojo provides robust, branded, and autonomous scheduling features; dynamic, automated follow-up and nurturing workflows; and comprehensive API and webhook integrations. (*Id.*)

These Blog Posts by RentEngine mislead the marketplace regarding Plaintiffs' products, resulting in reputational harm and materially disadvantaging Plaintiffs with both existing and prospective customers. (Compl. ¶¶ 36, 43, 44, 53; Squires Dec. ¶ 27.)

This misconduct is a coordinated campaign. Defendants and their associates repeatedly access and copy Plaintiffs' confidential functions, business logic, and internal processes, leaving Plaintiffs defending against multiple digital incursions. Defendants' have incurred significant expenses associated with investigation and remediation of these incursions. (Compl. ¶¶ 53, 54.)

## III. DEFENDANTS' DISREGARD OF LEGAL DEMANDS AND ONGOING HARM

Plaintiffs only recently discovered the extent of Defendants' wrongdoing after substantial losses had already been incurred—including the diversion of key customer accounts, reputational harm, and operational costs for investigation and remediation. (Squires Dec. ¶¶ 24-32; Kiser Dec. ¶¶ 24-29.) Upon confirming these violations, Plaintiffs' counsel issued a cease-and-desist letter on May 19, 2025. (Declaration of Robert S. Friedman ("Friedman Dec."), attached hereto as **Exhibit 3**, ¶ 3.) On May 23, 2025, Stringfellow responded by email that RentEngine would review the matter internally and take corrective action "if necessary". (*Id.* ¶ 4.) However, Defendants did not halt their conduct – in fact, they escalated their misconduct again attempting to login to Tenant Turner's platform on May 29, 2025. (*Id.* ¶ 5.)

Plaintiffs face immediate and continuing injury as a result of Defendants' actions, including loss of customer relationships, diminished goodwill, and harm to reputation and market position—injuries that are not fully quantifiable or remediable through monetary damages. Unless enjoined, Plaintiffs' proprietary systems, confidential business information, and significant investments remain at risk of further permanent compromise. Immediate judicial intervention is necessary to prevent additional unlawful conduct and further irreparable harm to Plaintiffs' businesses.

# ARGUMENT

## I. THE APPLICABLE LEGAL STANDARD WARRANTS ISSUANCE OF A PRELIMINARY INJUNCTION

To obtain a preliminary injunction, a movant must show: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see Carillon Importers, Ltd. v. Frank Pesce Int'l. Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). Here, an application of the facts to the factors weighs strongly in favor of granting a preliminary injunction to Plaintiffs. As demonstrated herein, Plaintiffs demonstrate a substantial likelihood of success, face ongoing and irreparable harm, and satisfy both the balance of the harms and the public interest.

## II. THERE IS A SUBSTANTIAL LIKELIHOOD THAT PLAINTIFFS WILL SUCCEED ON THE MERITS

"To establish a substantial likelihood of success on the merits, a plaintiff must demonstrate a likelihood of success at trial as to both its prima facie case and the affirmative defenses asserted by the defendant." *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015). As demonstrated by the Complaint, the Friedman Dec., the Squires Dec., and the Kiser Dec., Plaintiffs establish a strong likelihood of success on the merits of their claims for (1) violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a)(2), (a)(4); (2) false advertising and promotion in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (3) unfair competition under FDUTPA (defined herein); (4) common law unfair competition; (5) tortious interference with contract; (6) unjust enrichment; (7) conversion; (8) trespass to chattels; and (9) common law fraud.

### A. Defendants' Unauthorized and Ongoing Accessing of Plaintiffs' Platforms is a Clear Violation of the Computer Fraud and Abuse Act

A violation of the CFAA, which penalizes fraud and related conduct in connection with computers, occurs when a person intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer. 18 U.S.C. § 1030(a)(2)(C). A violation also occurs when a person "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." *Id.* §

1030(a)(4). A "protected computer" is a computer "used in or affecting interstate or foreign commerce or communication." *Id.* § 1030(e)(2)(B). The CFAA provides a victim who suffers a loss of $5,000 or more during any one-year period with a civil cause of action, including injunctive relief, against the violator. *See id*. § 1030(g). "[A]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense" constitutes a "loss" under the CFAA. *Id.* § 1030(e)(11).

Defendants' violation of the CFAA is continuing. *First,* Plaintiffs' Platforms reside, among other places, on computer systems, networks, and servers located in Ohio and Iowa, which Defendants accessed from and used in various states throughout the United States, implicating interstate and foreign commerce and communication. (Compl. ¶ 58); s*ee* 18 U.S.C. § 1030(e)(2).

*Second*, the Platforms' terms and conditions impose strict requirements for its customers regarding confidentiality, security, and acceptable use, including prohibiting customers from giving third parties access to the Platforms, and prohibiting reverse engineering, decompiling, disassembling, copying, creating derivative works from, or otherwise analyzing the Platforms. (Compl. ¶ 23(a)-(b); Squires Dec. ¶ 8, 9; Kiser Dec. ¶ 7, 8.) As third parties, Defendants lack any authority to access the Platforms and are not permitted to copy or use any information for the benefit of its own competing software. (Compl. ¶ 23(a)-(b); Squires Dec. ¶ 9; Kiser Dec. ¶ 8.)

*Third,* Defendants' actions, including misleading clients as to the need for RentEngine's access to the Platforms (i.e., for data migration) and circumventing domain blocks (Compl. ¶ 28; Kiser Dec. ¶ 13.), demonstrate a purposeful intent to unlawfully access the Platforms.[1]

---

[1] *See Skidata, Inc. v. Goudie*, 612CV1612ORL36KRS, 2012 WL 12883837, at *2 (M.D. Fla. Nov. 2, 2012) (granting motion for ex parte temporary restraining order and finding plaintiff had a substantial likelihood of success on the merits of its claims for violation of the CFAA where defendant had intentionally misused plaintiff's password and login identification unique to each authorized individual); *Pixsys Techs., Inc. v. Agemni, L.L.C.*, No. 2:13-CV-1929-SLB, 2013 WL 5739027, at *4 (N.D. Ala. Oct. 22, 2013) (finding plaintiff had a substantial likelihood of success on the merits of its claims for violation of the CFAA where defendant used a password without authorization to access, copy, and use for its own unauthorized purposes plaintiff's computer system); *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 671 (E.D. Pa. 2018) (holding that defendants who indirectly accessed plaintiff's computers through a person with access authority could be liable for indirect access under the CFAA); *see also TracFone Wireless, Inc.*

*Fourth,* as explained *infra* Section II(I), Defendants act with clear intent to defraud by knowingly misrepresenting the purpose for requesting customers' login credentials, when their actual objective is to access and exploit Plaintiffs' proprietary information for a competitive advantage. After the RentEngine domain was blocked, Defendants continued to attempt to defraud Plaintiffs by creating user accounts with alias domains (e.g., Gmail) specifically to induce Plaintiffs to inadvertently permit Defendants to continue to access the Platforms. This calculated deception and unauthorized access meets the CFAA's intent-to-defraud requirement.

*Finally*, Plaintiffs suffer losses in excess of $5,000. The CFAA's statutory definition of loss includes "two separate types of loss: (1) reasonable costs incurred in responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017) (citing 18 U.S.C. § 1030(e)(11)). Plaintiffs have incurred costs in excess of $5,000 in responding to Defendants' unauthorized access, which include costs to investigate and respond to the unauthorized access, monitor and block on-going attempts to access the Platforms, and significant diversion of employee resources to address past and future improper access. *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016) (finding a loss under the CFAA where plaintiff's employees "spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to [defendant's] actions."). Defendants also caused Plaintiffs to incur revenue loss in excess of $5,000. (Compl. ¶ 10, 54, 64; *see also* Squires Dec. ¶¶ 29, 31, 32; Kiser Dec. ¶¶ 28, 29.) Accordingly, Plaintiffs have established a likelihood of success on the merits of its CFAA claim.

### B. Defendants' False and Misleading Statements Constitute False Advertising in Violation of the Lanham Act

Section 1125(a)(1)(b) of the Lanham Act prohibits false or misleading descriptions or representations of fact "in commercial advertising or promotion" concerning "the nature, characteristics, qualities, or geographic origin of . . . goods, services, or commercial activities."

---

*v. Cabrera*, 883 F. Supp. 2d 1220, 1228 (S.D. Fla. 2012) (holding that defendant violated the CFAA by accessing plaintiff's "proprietary computer system by providing an improperly obtained and/or retained prepaid airtime codes, electronic serial numbers, ESNs, IMEIs, SIM card serial numbers, and other codes and access numbers" and "misrepresenting to [plaintiff] that he was authorized to access the system and network").

15 U.S.C. § 1125(a)(1)(B). To succeed on a false advertising claim under Section 1125(a)(1)(B), a plaintiff must establish:

> (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false advertising.

*Wyndham Vacation Ownership, Inc. v. US Consumer Att'ys, P.A.*, No. 18-81251-CIV, 2019 WL 7837887, at *6 (S.D. Fla. July 3, 2019). Advertisements are false or misleading when they are either "(1) commercial claims that are literally false as a factual matter or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Id.* at *7. A false statement constitutes "commercial advertising or promotion" where (1) it is commercial speech; (2) the defendant is in commercial competition with the plaintiff; (3) the statement was made to influence consumers to buy defendant's goods or services; and (4) the statement is sufficiently disseminated to the relevant purchasing public. *Wyndham Vacation Ownership*, 2019 WL 7837887, at *9. "Commercial speech" is speech which "does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983).

Here, RentEngine continues to disseminate statements literally false and materially misleading about the characteristics and qualities of Plaintiffs' Platforms in the Blog Posts, which are still available online. RentEngine's Blog Posts assert as objective fact that the Platforms lack particular features (such as "no API," "no lead nurturing," or lack of "24/7" support) when Plaintiffs provide such services, or mispresent the offerings available (such as stating the Platform only had unbranded, basic scheduling). (Comp. ¶¶ 35-42(h); Squires Dec. ¶¶ 21, 22; Kiser Dec. ¶¶ 20, 21.)

Plaintiffs are further entitled to a presumption that RentEngine's literally false statements have the potential to mislead, or did mislead, consumers. *ADT LLC v. Teamtronics, Inc.*, No. 14-CV-81589, 2015 WL 12866274, at *2 (S.D. Fla. May 18, 2015), *report and recommendation adopted*, No. 9:14-CV-81589, 2015 WL 12866275 (S.D. Fla. June 8, 2015) (internal citations omitted); *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, No. 1:06-CV-1678-JTC, 2007 WL 9752026, at *9 (N.D. Ga. Mar. 30, 2007) (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002)

The Blog Posts are likely to affect the purchasing decisions of property managers and real estate professionals—the relevant customer base for both Plaintiffs and RentEngine—because RentEngine misrepresents inherent qualities and characteristics of the Platforms. (Comp. ¶¶ 35-42(h); Squires Dec. ¶¶ 21, 22; Kiser Dec. ¶¶ 20, 21.) Such deception of is sufficient to demonstrate materiality as it is likely to influence a purchasing decision. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010).

RentEngine publishes these false statements in interstate commerce through its website, social media, and other promotional efforts directed at property managers, industry professionals, and the public throughout the United States. (Compl. ¶ 90.) Further, the parties compete directly in the property management software market, with their goods and services offered for sale in interstate commerce. (*Id*.)

Plaintiffs demonstrate actual and threatened injury in the form of lost revenue, diluted goodwill, and customer confusion, all recognized harms under the Lanham Act. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014).

Finally, the Blog Posts, still widely circulated online through RentEngine's website and social media pages to the same universe of potential clients, constitute commercial speech as they are "communication designed to advance business interests" of RentEngine. *Wyndham Vacation Ownership*, 2019 WL 7837887, at *9.

Accordingly, Plaintiffs have established a substantial likelihood of success on their Lanham Act false advertising claim.

### C. Defendants' Unfair and Deceptive Acts Give Rise to Liability Under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)

The FDUTPA declares "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Fla. Stat. § 501.204(1). "[W]hen considering whether a defendant's actions support a finding of 'unfair methods of competition, unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce,' courts have regarded the concept as 'extremely broad.'" *MJS Music Publications, LLC v. Hal Leonard Corp*, No. 806CV488T30EAJ, 2006 WL 1208015, at *2 (M.D. Fla. May 4, 2006) (internal citations omitted). An "unfair" trade practice under FDUTPA covers anything that "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). To prevail on a violation of the FDUTPA, Plaintiff must show: "(1) a deceptive act or

unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages." *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1298 (S.D. Fla. 2017) (citing *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983-984 (11th Cir. 2016). "To satisfy the first element, the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id*. (internal citations and quotations omitted).

Here, RentEngine is engaging in unfair and deceptive acts by making and disseminating false advertising regarding Plaintiffs' Platforms. As explained *supra* Point II.B, Plaintiffs demonstrate a likelihood of success on their claims for false advertising under the Lanham Act, which is sufficient to support a claim for violation of the FDUTPA based on false advertising. *See Wyndham Vacation Ownership v. Gallagher,* No. 619CV00476GAPEJK, 2019 WL 5458815, at *12 (M.D. Fla. Sept. 10, 2019).

RentEngine continues to engage in additional unfair and deceptive conduct by making false and misleading representations to Plaintiffs' customers regarding RentEngine's justification for requesting access to Plaintiffs' password-protected Platforms, claiming such access is needed for legitimate purposes such as data migration or software demonstrations. (Compl. ¶ 28.) Defendants' misrepresentations did, in fact, deceive and induce Plaintiffs' customers into providing login credentials, causing the customers to violate existing contracts with Plaintiffs and subjecting those customers to legal liability under the Platform's terms and conditions thus causing them harm. *See Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team*, LLC, No. 20-CV-25318, 2023 WL 4105529, at *8 (S.D. Fla. June 21, 2023), *opinion clarified*, No. 20-CV-25318, 2023 WL 4132386 (S.D. Fla. June 22, 2023) (finding allegations that defendants procured customers breach, default, and termination of timeshare agreements sufficient to demonstrate consumer harm). By making these misrepresentations, RentEngine has been able to gain unauthorized access to Plaintiffs' confidential and proprietary Platforms and information, causing direct harm to Plaintiffs, including monetary damages for lost revenue, investigative and remediation expenses, loss of business reputation and goodwill, and ongoing costs associated with addressing unauthorized access and customer migration. (Compl. ¶¶ 34, 44, 53, 54.)

Therefore, Plaintiffs' have demonstrated a likelihood of success on their FDUTPA claim.

### D. Defendants' Unlawful Conduct Constitutes Common Law Unfair Competition

Under the Florida common law, unfair competition is an umbrella cause of action for dishonest business practices with no single set of "elements that apply uniformly to all claims of unfair competition[.]" *See ADT LLC v. Alder Holdings*, LLC, No. 17-81237-CIV, 2018 WL 6505915, at *5 (S.D. Fla. Nov. 7, 2018), *report and recommendation adopted*, No. 9:17-CV-81237, 2018 WL 6620301 (S.D. Fla. Dec. 4, 2018), at *6 (internal citations omitted). "In the absence of elements that apply uniformly to all claims of unfair competition, the Eleventh Circuit has endorsed an approach which applies elements appropriate to the underlying acts of the unfair competition claim on a case by case basis." *ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 WL 5640725, at *4 (S.D. Fla. Aug. 3, 2017) (internal citations omitted). For example, trademark infringement, tortious interference,[2] and false advertising under the Lanham Act[3] all constitute underlying acts embodying an unfair competition cause of action under Florida law.

Here, Plaintiffs demonstrate a likelihood of success on their claims for both false advertising under the Lanham Act (*see supra* Point II.B) and tortious interference with contract (*see infra* Point II.E), which support a claim for unfair competition. *See Alder Holdings*, 2018 WL 6505915, at *6; *Tech. Med. Advancements, LLC*, 2015 WL 11438210, at *5. RentEngine clearly is engaging in dishonest business practices targeted at Plaintiffs and should not be permitted to continue.

Accordingly, Plaintiffs demonstrate substantial likelihood of success on their unfair competition claim.

### E. Defendants' Deliberate Interference with Plaintiffs' Customer Contracts Establishes Tortious Interference

To prevail on a claim for tortious interference with contract, a plaintiff must establish: (i) the existence of a valid contract; (ii) the defendant's knowledge of that contract; (iii) the

---

[2] *See Alder Holdings,* 2018 WL 6505915, at *6 ("For example, a party may claim unfair competition under a variety of theories, including trademark infringement, and tortious interference with business relations[.]") (internal citations omitted)

[3] *Tech. Med. Advancements, LLC v. Advanced Med. Distributors*, No. 15-80194-CIV, 2015 WL 11438210, at *5 (S.D. Fla. Oct. 2, 2015), *report and recommendation adopted*, No. 9:15-CV-80194, 2015 WL 11438211 (S.D. Fla. Oct. 22, 2015) (finding that defendants had sufficiently alleged unfair competition under Florida common law based on allegations of false advertising).

defendant's intentional and unjustified procurement of a breach; and (iv) resulting damages. *See Alder Holdings*, 2018 WL 6505915, at *5. Each of these elements is satisfied here.

Prior to Defendants' interference, Plaintiffs had valid and enforceable agreements governing the use of the Platforms with those customers with whom Plaintiffs targeted. (Squires Dec. ¶ 8; Kiser Dec. ¶ 7.) These agreements contain express provisions limiting access, imposing confidentiality obligations, and strictly prohibiting the sharing of credentials or using the Platforms for the benefit of third parties. (Squires Dec. ¶ 9; Kiser Dec. ¶ 8.) RentEngine was, and continues to be, actually and constructively aware of the existence and binding nature of these agreements, as evidenced by their creation of accounts on the Platforms, Plaintiffs' respective terms and conditions being publicly available on their websites and/or Defendants' acceptance of the relevant terms and conditions[4], and Defendants' receipt of Plaintiffs' cease-and-desist letter. (Compl. ¶¶ 6, 7, 23, 30, 45, 46.)

RentEngine intentionally and unjustifiably interfered with these contractual relationships by encouraging, soliciting, and inducing Plaintiffs' customers to provide their login credentials—a direct violation of the contractual provisions prohibiting such conduct – and by making false statements about the Platforms. (Compl. ¶¶ 28, 37-43; Squires Dec. ¶¶ 12, 19-22; Kiser Dec. ¶¶ 17, 19-21.) Plaintiffs' customers, in turn, breached these agreements by granting RentEngine unauthorized access and canceled their accounts with Plaintiffs. (Compl. ¶¶ 27, 28, 34, 51, 53; Squires Dec. ¶¶ 24, 25, 29; Kiser Dec. ¶¶ 24, 25.) Plaintiffs suffered substantial monetary damages as a result, including lost revenue, investigative and remediation expenses, loss of business reputation and goodwill, and ongoing costs associated with addressing unauthorized access and customer migration. (Compl. ¶ 54, 55.) If permitted to continue its conduct, RentEngine will tortiously interfere with even more of Plaintiffs' customer relationships.

Based on the foregoing, Plaintiffs demonstrate a substantial likelihood of success on their claim for tortious interference with contract.

### F. Defendants' Unauthorized Access and Exploitation of Plaintiffs' Proprietary Assets Results in Unjust Enrichment

To prevail on a claim for unjust enrichment, a plaintiff must show: (1) a benefit knowingly conferred on the defendant; (2) the defendant voluntarily accepts and retains that

[4] Tenant Turner's terms and conditions are presented as clickwrap agreements, while ShowMojo's terms and conditions utilize a browsewrap format.

benefit; and (3) inequity in the defendant retaining the benefit without compensating the plaintiff. *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1301 (S.D. Fla. 2016).

All of these elements are satisfied. RentEngine knowingly receives significant benefit from Plaintiffs by unlawfully accessing the Platforms without authorization or payment. RentEngine continues to use Plaintiffs' valuable data, unique functionalities, customer information, and proprietary business logic to solicit and acquire customers, and generate revenue, which supports an unjust enrichment claim. *See, e.g., Lighthouse List Co., LLC v. Cross Hatch Ventures Corp.*, No. 13-60524-CIV, 2013 WL 11977916, at *10 (S.D. Fla. Aug. 13, 2013).

Furthermore, RentEngine's repeated unauthorized access and its conscious efforts to circumvent Plaintiffs' security controls—such as the use of alias email addresses—demonstrate that it voluntarily accepted and retains these benefits. *See TracFone Wireless, Inc. v. Adams*, 98 F. Supp. 3d 1243, 1259 (S.D. Fla. 2015) ("[Defendant] voluntarily accepted the benefit because he chose to perpetrate his Scheme.") Additionally, the Plaintiffs' customers canceled their accounts with Plaintiffs and engaged RentEngine instead as a direct result of RentEngine's conduct. It is inequitable for RentEngine to retain these benefits without compensation.

Accordingly, Plaintiffs have established a substantial likelihood of success on their claim for unjust enrichment.

### G. Defendants' Wrongful Exercise of Dominion Over Plaintiffs' Property Constitutes Conversion

A claim for conversion under Florida law requires: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with Plaintiff's ownership therein." *Island IP Acquisitions, LLC v. Antle*, No. 22-81293-CIV, 2023 WL 11917231, at *6 (S.D. Fla. May 19, 2023) (sustaining conversion claim involving defendant's refusal to return control of the web domains). Here, each of the factors are met.

*First*, Plaintiffs are the exclusive owners and rightful possessors of their proprietary Platforms, underlying databases, user interfaces, and all related digital assets. (Compl. ¶ 122.)

*Second*, RentEngine intentionally has been accessing the Platforms in a way that is inconsistent with Plaintiffs' rights. RentEngine, without authorization, has been soliciting Plaintiffs' customers for login credentials under false pretenses, setting up and operating unauthorized accounts, and circumventing Plaintiffs' security protocols. (Compl. ¶ 28-31.) Beyond access, RentEngine copied, extracted, and continues to disseminate proprietary data

directly from Plaintiffs' secure systems. (Compl. ¶ 33.) These actions are expressly prohibited by the agreements between Plaintiffs and their customers. (Squires Dec. ¶ 9; Kiser Dec. ¶ 7, 8; Compl. ¶ 23(a), 23(b), 24.) Unauthorized access and use of digital assets in this manner is sufficient to sustain a conversion claim. *See D&J Optical, Inc. v. Wallace*, No. 1:14CV658-MHT, 2015 WL 1474146, at *8 (M.D. Ala. Mar. 31, 2015); *see also Lighthouse List Co., LLC v. Cross Hatch Ventures Corp*., No. 13-60524-CIV, 2013 WL 11977916, at *8 (S.D. Fla. Aug. 13, 2013) (citing *Rosenthal Toyota, Inc. v. Thorpe*, 824 F. 2d 897, 902 (11th Cir. 1987). Here, RentEngine's conduct is precisely the kind of wrongful interference with property rights barred under Florida law. Plaintiffs have therefore established a substantial likelihood of success on their claim for conversion.

### H. Defendants' Unauthorized Use and Interference with Plaintiffs' Platforms Constitutes Trespass to Chattels

Trespass to chattels occurs with the "intentional use or interference with a chattel in another's possession without justification." *LeVeille v. Upchurch*, No. 3:19-CV-908-BJD-MCR, 2021 WL 6125470, at *8 (M.D. Fla. Oct. 15, 2021) (citing *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. 4th DCA 1998). In Florida, "[a]ny unlawful interference, however slight, with another's enjoyment of his or her personal property is a trespass." *Am. Fed'n of Lab.-Cong. of Indus. Organizations v. City of Miami*, No. 07-22966-CIV, 2008 WL 11333331, at *9 (S.D. Fla. Sept. 4, 2008) (internal citations omitted). Trespass can occur "even absent physical damage, impairment, or deprivation—the interference is enough." *Grace v. Apple, Inc*., 328 F.R.D. 320, 346 (N.D. Cal. 2018) (applying Florida law).

As set forth *supra* Point II.G, Plaintiffs are the exclusive owners and rightful possessors of their proprietary Platforms, including the underlying databases, user interfaces, and all associated digital assets. Without justification or authorization, RentEngine intentionally accessed and continues to attempt to access these password-protected Platforms by soliciting customer credentials and employing deceptive tactics to gain and maintain access, all in violation of the Platforms' terms of use. Unauthorized access to online systems or accounts supports a claim for trespass. *See Klein v. Oved*, No. 9:22-CV-80160-KAM, 2022 WL 4772399, at *6 (S.D. Fla. Aug. 19, 2022); *Summit Ent., LLC v. Santia*, No. 2:11-CV-06310-ODW-SSX, 2014 WL 12577430, at *5 (C.D. Cal. June 24, 2014); *State Analysis, Inc. v. Am. Fin. Servs. Assoc*., 621 F. Supp. 2d 309, 320 (E.D. Va. 2009).

RentEngine's deliberate and unauthorized access to Plaintiffs' password-protected Platforms interferes with Plaintiffs' exclusive control over their property, which is reserved solely for users authorized by Plaintiffs. (Squires Dec. ¶ 8, 9; Kiser Dec. ¶ 7; Compl. ¶ 23(a).) These actions easily meet the threshold for liability, as Plaintiffs are required to show only a slight interference with their rights to the property. *See Am. Fed'n of Lab.-Cong. of Indus. Organizations*, 2008 WL 11333331, at *9.

Accordingly, Plaintiffs demonstrate a substantial likelihood of success on their claim for trespass to chattels.

**I. Defendants' Material Misrepresentations and Deceptive Conduct Constitute Common Law Fraud**

A claim for fraud requires: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." *Plastiquim, S.A. v. Odebrecht Constr., Inc.*, 337 So. 3d 1270, 1273 (Fla. 3d DCA 2022).

Defendants' representation to Plaintiffs' customers about the legitimacy and permissibility of its access to Plaintiffs' password-protected Platforms is false. Granting a third-party competitor access to the Platforms is a violation of the Plaintiffs' terms and conditions regardless of whether RentEngine was using that access solely for data migration and software demonstrations or for other purposes. (Squires Dec. ¶ 9; Kiser Dec. ¶ 8; Compl. ¶ 23(a).) But even further, Plaintiffs' representation that data migration and software demonstrations were the reason for needing access to the Platforms is also false. Rather than using access for legitimate purposes, Defendants unlawfully accessed and exploited Plaintiffs' confidential and proprietary information, and used it for the marketing of directly competing software products. (Compl. ¶¶ 23, 33, 36-43.) Defendants' representations were material because they caused Plaintiffs' customers to provide Defendants with login credentials, granting unauthorized access to Plaintiffs' confidential and proprietary Platforms and information, and canceling their accounts. (Compl. ¶¶ 27, 28, 34, 51; Squires Dec. ¶¶ 24, 25, 29; Kiser Dec. ¶¶ 24, 25.) Defendants intended for these false representations to mislead Plaintiffs' customers, and Plaintiffs' customers in fact relied on these false representations by granting RentEngine access to the Platforms and their confidential contents and canceling their accounts. *See 1st Team Tech., Inc.*

*v. Sys. Eng'g, Inc.*, No. 3:10CV256/MCR/CJK, 2012 WL 12873551, at *2 (N.D. Fla. June 12, 2012).

Defendants also falsely represented themselves as legitimate customers by using fictitious domains and alias email accounts to conceal their identities and enable ongoing, unauthorized access to the Platforms without Plaintiffs' knowledge or consent. (Compl. ¶ 31; Kiser Dec. ¶ 13.) These material misrepresentations are enabling Defendants to circumvent Plaintiffs' technical safeguards put in place to restrict RentEngine's attempts at access. Defendants makes these false representations with the intent to deceive Plaintiffs, and Plaintiffs have indeed been misled by these false identities, initially believing that the alias accounts actually belonged to legitimate customers. Plaintiffs' reliance on these misrepresentations is evident in that Defendants' access was allowed, whereas other known RentEngine users were blocked from the Platforms. *See 1st Team Tech.*, 2012 WL 12873551, at *2.

All of the aforementioned misrepresentations harmed Plaintiffs by depriving them of the exclusive use of their proprietary technology, causing loss of competitive advantage, reputational harm, and pecuniary damages. As such, Plaintiffs are likely to succeed on their claim for fraud.

## III. PLAINTIFFS ARE BEING IRREPARABLY HARMED BY DEFENDANTS' CONDUCT

Plaintiff's irreparable harm caused by Defendants' conduct is imminent and ongoing and there is a clear and present need for equitable relief to prevent continued harm. Defendants must be enjoined from their unauthorized access to and use of Plaintiffs' proprietary Platforms and confidential business information, and their continued publication of false and misleading statements about the Plaintiffs in RentEngine's advertising. Moreover, Defendants' disregard for Plaintiffs' cease and desist demand evidences an ongoing risk of continued misuse and further irreparable harm.

Defendants have taken and continue to attempt to take Plaintiff's proprietary and password-protected computer software and the data contained therein and is using and will continue to use such property to compete with Plaintiffs. This information is the foundation of Plaintiffs' businesses and it is being used improperly by a competitor; the damages are irreparable because they are difficult or impossible to measure. This is why courts consistently hold that unauthorized access to a company's secured computer systems and misuse of proprietary data causes irreparable harm by interfering with the owner's right to control its own systems and confidential information. *See Pixsys Techs.*, 2013 WL 5739027, at *5; *Facebook,*

*Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 782 (N.D. Cal. 2017); *Physicians Interactive v. Lathian Sys., Inc.*, 2003 WL 23018270, at *6 (E.D. Va. Dec. 5, 2003).

These actions irreparably impair the integrity and competitive value of Plaintiffs' proprietary solutions, business methodologies, and customer relationships, and directly threaten their reputation and goodwill in the marketplace. Each instance of unauthorized access and use further damages the security of Plaintiffs' systems and the confidentiality upon which Plaintiffs' businesses rely. Allowing Defendants to persist in this conduct will cause ongoing, irreparable harm by progressively degrading the integrity of the proprietary Platforms. *See*, *e.g*., *Adams*, 98 F. Supp. at 1256.

In relation to Plaintiffs' false advertising claim, where, as here, "the challenged advertising makes a misleading comparison to a competitor's product, irreparable harm is presumed." *N. Am. Med. Corp. v. Axiom Worldwide, Inc*., 522 F.3d 1211, 1227 (11th Cir. 2008) (internal citations omitted). RentEngine continues to publish the Blog Posts, which are false, online to a community consisting of Plaintiffs' existing and prospective customers. It is simply impossible to ascertain the reaches of the damage being caused to Plaintiffs from this continued false advertising. The Blog Posts need to be removed from the internet and RentEngine must be enjoined from continuing to make false statements in its advertising about Plaintiffs.

Even further, damage to reputation and loss of customer good will is *per se* irreparable harm. *See, e.g*., *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005); *Pixsys Techs.*, 2013 WL 5739027, at *4. Plaintiffs have already lost numerous customer accounts as a result of Defendants' actions. (*See* Squires Dec. ¶¶ 25, 26; Kiser Dec. ¶¶ 24, 25.) If permitted to continue, this number will only grow, and the damage to Plaintiffs' reputations and good will with their customers may never recover. The damage is simply impossible to calculate.

Without injunctive relief, Defendants are likely to persist in their unlawful conduct, and Plaintiffs will be left without an adequate remedy at law given the inherent difficulty of quantifying the loss of confidential information, customer goodwill, and competitive advantage.

Under these circumstances, immediate injunctive relief is necessary to prevent ongoing and future irreparable injury to Plaintiffs.

## IV. THE BALANCE OF HARDSHIPS WEIGHS DECISIVELY IN FAVOR OF PLAINTIFFS

Defendants cannot demonstrate any legitimate harm arising from a preliminary injunction prohibiting unlawful access to the Platforms or publishing false statements in its advertising about Plaintiffs. Defendants have no right to solicit credentials, access Plaintiffs' confidential systems, or utilize their proprietary information for competitive gain. A party suffers no cognizable hardship when enjoined from engaging in unlawful conduct, particularly where such conduct involves unauthorized intrusion into protected systems and the diversion of business or customers and even constitutes a criminal action under the CFAA. *See YourNetDating, Inc. v. Mitchell*, 88 F. Supp. 2d 870, 872 (N.D. Ill. 2000); *Taxsalelists.com, L.L.C. v. Rainer*, No. 09-CV-02898-REB-KMT, 2009 WL 4884273, at 3 (D. Colo. Dec. 11, 2009); 18 U.S.C. 1030(c). In contrast, Plaintiffs face significant and ongoing harm to the security of their systems, theft and exposure of confidential and proprietary information, loss of customer goodwill, and impairment of their standing in the marketplace. Accordingly, the balance of harms overwhelmingly favors granting the requested injunctive relief.

## V. THE PUBLIC INTEREST WOULD BE ADVANCED BY THE ISSUANCE OF THE REQUESTED INJUNCTION

Granting the requested injunction would serve the public interest by halting continuing unlawful access and misuse of protected business platforms and information. Permitting RentEngine to persist in its conduct would allow ongoing violations not only of Plaintiffs' rights but also of laws designed to protect the integrity and confidentiality of proprietary digital systems. The public interest in preventing unauthorized access to computer systems is so strong that Congress has criminalized the behavior. *See, e.g.,* 18 U.S.C. 1030(c) (criminal penalties for CFAA violations). Further, the public has a strong and legitimate interest in the enforcement of laws against unauthorized computer access and unfair competition. *See Physicians Interactive v. Lathian Sys., Inc.*, 2003 WL 23018270, at 10. Preserving the security and confidentiality of technology platforms is essential to encouraging innovation and protecting all market participants.

The public interest also strongly supports the protection and enforcement of contractual rights. *See Moon v. Med. Tech. Assocs., Inc.*, No. 8:13-cv-02782, 2014 WL 1092291, at *3 (M.D. Fla. Mar. 19, 2014). Enjoining RentEngine from further interference with Plaintiffs' contractual relationships with their customers not only upholds the rule of law, but also fosters stability and predictability in commercial affairs. Preventing companies from disrupting the established or

prospective business relationships of others directly advances the public interest. *See eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*, 519 F. Supp. 3d 1129, 1137 (S.D. Fla. 2021).

The injunctive relief sought here thus advances interests that extend beyond the parties, safeguarding both market integrity and the rule of law.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant their Motion for a Preliminary Injunction.

## REQUEST FOR A HEARING UNDER LOCAL RULE 7.1(B)(2)

In accordance with Local Rule 7.1(b)(2), Plaintiffs respectfully request that the Court hold oral argument on this Motion for Preliminary Injunction. Plaintiffs believe that a hearing would be helpful to the Court in assessing the urgency of Plaintiffs' request and immediacy of the harm Plaintiffs face in the absence of the issuance of a preliminary injunction, and will permit the parties to address any specific questions the Court may have regarding the operative facts, evidentiary submissions, or legal authorities cited. Plaintiffs estimate that approximately 45 minutes per side will be required for oral argument. Accordingly, Plaintiffs respectfully request that the Court schedule a hearing on this Motion at its earliest convenience.

Dated: July 1, 2025

s/ *Aaron S. Weiss*
Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Ave, Ste. 1200
Miami, Florida 33136
Telephone: (305) 530-0050

Robert S. Friedman*
rfriedman@sheppardmullin.com
Emily D. Anderson*
emanderson@sheppardmullin.com
Meghan M. Stuer*
mstuer@sheppardmullin.com
Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 634-3081

*Pro Hac Vice to be Filed

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 1, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: *s/ Aaron S. Weiss*
AARON S. WEISS, ESQUIRE